CRAIG H. MISSAKIAN (CABN 125202)
United States Attorney

JEFF MITCHELL (CABN 236225)
Chief, Criminal Division

KEVIN J. BARRY (CABN 229748)
Assistant United States Attorney

 450 Golden Gate Avenue, Box 36055
 San Francisco, California 94102-3495
 Telephone: (415) 436-6840
 FAX: (415) 436-7234
 Email; kevin.barry@usdoj.gov

Attorneys for United States of America

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | NO. 25-CR-0030 CRB |
|   Plaintiff, | **UNITED STATES' SENTENCING MEMORANDUM** |
|  v. | Sentencing Date:  July 22, 2026 |
| CHRISTINA MOBLEY, | Time:     10:00 am |
|   Defendant. | Hon. Charles R. Breyer |

**INTRODUCTION**

Because of its position in the Northern District of California, the Court has seen many cases of fraud and theft where a business loss of $500,000 or $600,000 seems trivial. For tech giants, this is less than a rounding error. But Fortuna, California is not Silicon Valley, and Beacom Construction is not Google. The Defendant's embezzlement of nearly $600,000 from that small business in that small town was devastating. It caused tremendous anxiety, and the company nearly went bankrupt. People who depended on Beacom for their salaries were afraid they would lose their jobs, with no way to put food on the table. The owners of Beacom had to scramble to keep the company afloat in the wake of the Defendant's fraud, delaying their retirement, straining their relationships, and destroying their peace of mind.

Even more devastating than the financial pain, though, was the sense of betrayal.  Beacom's owners treated Defendant Christina Mobley like their daughter.  They trusted her with everything in the company, from office management to bookkeeping.  Like family, they even trusted her with personal matters, like being the executor of one owner's will.  The Defendant betrayed that trust by stealing everything she could, in whatever way she could.  The pain of that betrayal will persist long after the financial damage is addressed.

For these reasons, the government respectfully recommends that the Court sentence Defendant Mobley to the low end of the Guidelines range for her offense conduct, or 27 months, to three years of supervised release, a $400 special assessment, and restitution of $586,000.

## DEFENDANT'S OFFENSE CONDUCT

The Defendant began working for Beacom Construction in 2002, becoming office manager in 2018.  This gave her full access to the firm's bank accounts and accounting systems.  Starting in January 2022, she began stealing in a variety of ways.  She began issuing business checks to pay for her personal credit card statements.  PSR ¶ 7.  She also sent wire transfers from Beacom's bank accounts to her credit card's accounts, again to pay for personal expenses.  PSR ¶ 8.  In addition to the ability to have the company's bank issue checks, Defendant Mobley had access to pre-signed business checks in the office.  She made out nearly two dozen of these to herself, some of which she used to pay off her car loan.  PSR ¶ 9.  Finally, in her capacity as office manager and bookkeeper, she arranged for the company to grant her significantly more vacation time and to pay her unauthorized overtime and bonuses.  PSR ¶ 10.  This resulted in a loss of $586,000.

## SENTENCING GUIDELINES CALCULATION

The government agrees with the Probation Officer's calculation of an adjusted offense level of 18, taking into account the dollar amount of the loss, the fact that the Defendant took advantage of a position of trust, and the Defendant's lack of criminal history.  That lack of history results in a Criminal History Category of I.  At an offense level of 18 and CHC I, the Guidelines range is 27-33 months.

## SECTION 3553(A) FACTORS

The critical Section 3553(a) factors in this case are the history and characteristics of the Defendant and the nature and circumstances of the crime, § 3553(a)(1); the need for the sentence to

reflect the seriousness of the crime, to promote respect for the law, and to provide just punishment for the offense, § 3553(a)(2)(A); and the need to afford adequate deterrence to criminal conduct, § 3553(a)(2)(B).

With respect to her history and characteristics, the Defendant held herself out as a pillar of the community. She was a member of the Fortuna City Council. PSR ¶ 39. She sat on the boards of Redwood Coast Energy Authority, the Humboldt Domestic Violence Services, and the Redwood Memorial Hospital Fundraising Committee. PSR ¶ 39. In addition to being almost family to the owners and employees of Beacom, these positions of trust and status made it unthinkable that she would be bleeding the company nearly dry over several years. Indeed, as one of the victims informed the Court, when the company realized that they were in financial trouble, they enlisted the Defendant—the very person who was siphoning off cash—to look into the situation and get the company back on track.

Since at least January 2022, the Defendant was lying during every City Council meeting and during every board meeting. She held herself out as a person to be trusted, including on fundraising committees, but she was a thief. She was methodically destroying a small business that provided livelihood to members of her community. She was stealing so she could take vacations, eat out at restaurants, purchase personal goods, gamble at casinos, and pay off her car.

It is true that the PSR recounts details of a childhood marred by abuse. PSR ¶¶ 36-38, 40. However, it is important to note that the Defendant's criminal conduct was not compulsive. She does not appear before the Court after a string of crimes caused by substance abuse or after committing a crime that resulted from psychological malformation. There is no evidence of a traumatic triggering event that prompted the fraud and embezzlement in which she engaged. In short, the Defendant did not commit this crime because of childhood trauma. She committed this crime because she wanted money and was so trusted that she thought she could get away with it.

The victim impact statements detail how the Defendant continued to steal even when she knew that Beacom was in serious financial trouble. This not only shows a lack of remorse, discussed below, but it supported her belief that she would get away clean. If Beacom failed, its assets would be sold and the company would be dissolved. As the bookkeeper, the fiduciary for the bank accounts, and the office manager, the Defendant could make sure that there would be no post-mortem of what happened, and the

two owners would never suspect she was responsible. She would no longer have access to Beacom's money, and she would have to pay her own credit cards moving forward, but her theft would remain hidden. Her position on the City Council would be secure, and she would enjoy the support that the community would extend to the other Beacom employees who were now out of work. Thus, not only was she not remorseful when it was clear that her embezzlement was seriously harming the company, she continued to perpetuate that harm, and she did so both to enrich herself and to avoid detection.

With respect to the Defendant's childhood, it is also important to note that this crime was not impulsive. It was not a sudden act that she didn't understand or couldn't control. Rather, it was a lengthy and multifaceted fraud. As the Indictment, the PSR, and her guilty pleas demonstrate, the Defendant stole from Beacom in several ways. This was not done to minimize damage to the company; it was to maximize the amount she could take. Transferring over half-a-million dollars from Beacom's bank account at one time would be noticed. By using different methods, she was able to keep looting the company for years and to remain undetected. In fact, Beacom's owners did not know that the Defendant was responsible for the financial pressure on the company until the FBI showed up. Even then, they refused to believe it.

In assessing the Defendant's history and characteristics, the Court must consider that the Defendant has not shown a shred of remorse. She pleaded guilty, and she made a perfunctory statement of acceptance of responsibility in the Presentence Report, but that was only because she was caught. As the victim statements recount, the Defendant knew that her embezzlement caused serious problems for the company, but she did not stop. She did not try to pay back the money she stole; she did not admit what she did to the owners, who treated her like a daughter; and she did not try to shore up the company in other ways. Instead, she kept stealing. When the FBI came to Beacom and confronted the Defendant with evidence of her theft, she admitted taking money, but she only confessed stealing what the FBI knew about. She eventually pleaded guilty to over $500,000 of stolen money, but only because the FBI developed evidence of the extent of her fraud.

The Defendant's lack of remorse can be most clearly seen in two events after she was confronted with her embezzlement. The first was her scheme to repay the company—or at least the limited amount the company and the FBI knew about at the time—and to do so by borrowing half of her repayment

UNITED STATES' SENTENCING MEMORANDUM
Case No. 25-CR-0030 CRB                    4

from one of the owners of the very company she looted.  *And the owner agreed*.  This was likely because he looked at her like a daughter and didn't want her to get in trouble.   This not only highlights the defendant's lack of remorse; it also shows her brazenness and the profound depth of her breach of trust.  The second example took place in December 2024 after her fraud was uncovered.  The Defendant had made herself so essential to Beacom that they needed her to keep working even after the FBI identified aspects of her fraud and she confessed to what they knew.  As the victim impact statements detail, however, her continued employment enabled her to steal yet another $2,000, which ultimately forced the company to fire her.

The Defendant's lack of remorse leads to another sentencing factor: the need to reflect the seriousness of the crime, to promote respect for the law, and to provide just punishment for the offense.  As the victims have informed the Court, the crime was serious, and it had a profound impact on them.  For this reason, the sentence must reflect a sense of punishment.  A term of 27 months in custody is significant, particularly for someone who has no criminal record.  However, the crime was serious, and the sentence must reflect that.  Further, the length of this term will not completely derail the Defendant's life.  She will get out of custody, and hopefully she will become a productive member of society.  A term of 27 months provides for that outcome, but it provides just punishment at the same time.

With respect to deterrence, a sentence within the Guidelines should serve not only to deter the Defendant from engaging in future similar conduct; it will provide general deterrence as well.  Fortuna is a small town, and the Defendant had a prominent role within it.  The community is watching this case, and there are likely others who, like the Defendant, may be tempted to exploit positions of considerable trust for their personal gain.  A significant sentence will send the message that this type of serious criminal conduct will be met with serious consequences, and others potential victims may be protected.

//
//
//
//
//
//

UNITED STATES' SENTENCING MEMORANDUM
Case No. 25-CR-0030 CRB                    5

**CONCLUSION**

For the reasons set forth above, in the Presentence Report, and in the victim impact statements, the government respectfully submits that the Court should sentence the Defendant Christina Mobley to a term of 27 months in prison, three years of supervised release, a $400 special assessment, and restitution of $586,000.


DATED:  July 15, 2026                                        Respectfully submitted,

                                                            CRAIG H. MISSAKIAN
                                                            United States Attorney

                                                            __/s/ *Kevin J. Barry*_____
                                                            KEVIN J. BARRY
                                                            Assistant United States Attorney

UNITED STATES' SENTENCING MEMORANDUM
Case No. 25-CR-0030 CRB                    6